**IN THE UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| KATIE STEELE individually and as the legal guardian of a minor child and on behalf of all others similarly situated, | Case NO.: 2:22-cv-00571-DCN |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| ABBOTT LABORATORIES INC., | |
| Defendant. | |

## CLASS ACTION COMPLAINT

Plaintiffs individually and as the legal guardian of a minor child, and on behalf of all others similarly situated (the "Class," as defined below), on personal knowledge with respect to facts pertaining to them and upon information and belief as to other matters, bring this class action complaint against Defendant, ABBOTT LABORATORIES INC ("Defendant" or "ALI"), and allege:

## INTRODUCTION

1.      Plaintiffs bring this action both on their own behalf, and as legal guardian of a minor child, and on behalf of a Class compromised of all others similarly situated to redress Defendant's numerous unfair and deceptive acts and practices designed to mislead the public in connection with their promotion, marketing, advertising, packaging, labeling, distribution and/or sale of Similac Infant Formula, including but not limited to Similac®, Alimentum® and EleCare® products ("class products" or "said Similac products") which Defendants unfairly and deceptively promoted during the relevant time period as containing ingredients safe for infant consumption and being safe for use, when, in fact, they cause bacterial infections and gastrointestinal illnesses such as Cronobacter Sakazakii, Salmonella, diarrhea, gastrointestinal illnesses, and other serious health problems.

28



*https://www.similac.com/home.html*

2.      Similac, owned and made by ABBOTT LABORATORIES INC., tells consumers that "[t]he Promise of Similac… [is] to help keep your baby fed, happy, and healthy"[1] and that Similac brand is "Nutrition you can trust."[2] But recent testing at one of Abbott Nutrition's manufacturing facilities tells a different story – one of broken promises, mistrust and concealment. After receiving consumer complaints of *Cronobacter sakazakii* and *Salmonella* infections, the FDA's investigation along with the U.S. Centers for Disease Control and Prevention, and state and local partners, confirmed that Abbott Nutrition's Sturgis, Michigan facility had findings to date of "several positive *Cronobacter sakazakii* results from environmental samples taken by the FDA and adverse inspectional observations by the FDA investigators."[3]

3.      Moreover, Politico reported that the FDA first received a report of a foodborne illness suspected to be linked to infant formula in September – four months before issuing the recall of three major brands – after four babies were hospitalized and one died.[4] The Minnesota Department of Health investigated a case of an infant who was sickened by *Cronobacter sakazakii* in September 2021, the state agency told Politico.[5] State health officials in Minnesota knew that the infant had

---

[1] *Similac Home,* Abbott, 2022, https://www.similac.com/home.html (last visited Feb. 22, 2022).
[2] *The Promise of Similac,* Abbott, 2022 https://www.similac.com/why-similac/promise-of-similac.html (last visited Feb. 22, 2022).
[3] *FDA News Release*, Feb. 17, 2022, https://www.fda.gov/news-events/press-announcements/fda-warns-consumers- not-use-certain-powdered-infant-formula-produced-abbott-nutritions-facility (last visited Feb. 20, 2022).
[4] FDA learned of suspected infant formula illness four months before recall, February 18, 2022, https://www.politico.com/news/2022/02/18/fda-infant-formula-illness-four-months-before-recall-00010226 (last visited Feb. 22, 2022)
[5] *Id.*

consumed powdered formula produced at an Abbott Nutrition facility in Sturgis, Mich., and shared this information with the FDA and CDC in September of 2021.[6] Inspectors found Cronobacter sakazakii in several environmental samples taken at the plant, *as well as records suggesting the company had been finding the bacteria in the plant and had destroyed product because of the issue*.[7]

## JURISDICTION & VENUE

4.      Plaintiff is a citizen of Ridgeville, South Carolina.

5.      Defendant, Abbott Laboratories Inc is a Delaware corporation with a principal place of business in Abbott Park, Lake County, and Illinois.

6.      Defendant transacts business within this District through sale of infant formula within this District, at grocery stores, drug stores, big box stores, membership stores, and online, sold directly to the citizens of this District.

7.      This Court has subject jurisdiction over this matter pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (1) there are 100 or more putative Class Member, (ii) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, and (iii) there is minimal diversity because Plaintiff and Defendant are citizens of different states. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

8.      This Court has personal jurisdiction over Defendant because they have substantial aggregate contacts with this District, including engaging in conduct in this District that has a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons throughout the United States, and because they purposely availed themselves of the laws of the United States and South Carolina, including in this District, and/or has caused its products to be disseminated in this District.

9.      Venue in this district is proper in this Court pursuant to 28 U.S.C. §1391 because Plaintiff Katie Steele resides in this District, a substantial part of the conduct giving rise to Plaintiff's

---

[6] *Id.*
[7] *Id.*

claims occurred in this District, ALI transacts business in this District, and has intentionally availed itself of the laws and markets within this District.

## FACTUAL ALLEGATIONS

10.      Plaintiff repeats, reiterates, and realleges, each and every allegation contained in this complaint with the same force and effect as if fully set forth herein.

11.      Abbott Laboratories Inc., ("Defendant") manufactures, labels, markets, and sells infant formula under the Similac, Alimentum, and Elecare brands.

12.      On February 17, 2022, the U.S. Food and Drug Administration ("FDA") announced it was investigating consumer complaints of Cronobacter and Salmonella infections related to ingestion of Similac, Alimentum and EleCare.

13.      Specifically, the FDA announced it was: "investigating consumer complaints of Cronobacter *sakazakii* and Salmonella Newport infections. All of the cases are reported to have consumed powdered infant formula produced from Abbott Nutrition's Sturgis, Michigan facility. As a result of the ongoing investigation, along with the U.S. Centers for Disease Control and Prevention and state and local partners, the FDA is alerting consumers to avoid purchasing or using certain powdered infant formula products produced at this facility. This is an ongoing investigation, and the firm is working with the FDA to initiate a voluntary recall of the potentially affected product."[8]

14.      The FDA news release further advised consumers should "not use Similac, Alimentum, or EleCare powdered infant formulas if:

- the first two digits of the code are 22 through 37; and

- the code on the container contains K8, SH or Z2; and

- the expiration date is 4-1-2022 (APR 2022) or later.*"[9]*

---

[8] News Release, Food & Drug Administration, FDA Warns Consumers Not to Use Certain Powdered Infant Formula Produced in Abbott Nutrition's Facility in Sturgis, Michigan (Feb. 17, 2022), https://www.fda.gov/news-events/press-announcements/fda-warns-consumers-not-use- certain-powdered-infant-formula-produced-abbott-nutritions-facility.
[9] *Id*.

15.     The FDA news release also advised it was "investigating complaints of four infant illnesses from three states. All four cases related to these complaints were hospitalized and *Cronobacter* may have contributed to a death in one case. The FDA has initiated an onsite inspection at the facility. Findings to date include several positive *Cronobacter sakazakii* results from environmental samples taken by the FDA and adverse inspectional observations by the FDA investigators. A review of the firm's internal records also indicate environmental contamination with *Cronobacter sakazakii* and the firm's destruction of product due to the presence of *Cronobacter*."[10].

16.     The FDA Deputy Commissioner for Food Policy and Response, Frank Yiannas, expressed concern over the infant food contamination noting "As this is a product used as the sole source of nutrition for many of our nation's newborns and infants, the FDA is deeply concerned about these reports of bacterial infections."[11].

17.     Cronobacter bacteria can cause severe, life-threatening infections (sepsis) or meningitis (an inflammation of the membranes that protect the brain and spine). Symptoms of sepsis and meningitis may include poor feeding, irritability, temperature changes, jaundice (yellow skin and whites of the eyes), grunting breaths and abnormal movements. Cronobacter infection may also cause bowel damage and may spread through the blood to other parts of the body.[12] Further, according to the CDC, Cronobacter infections can result in the death of babies.[13]

18.     Salmonella are a group of bacteria that can cause gastrointestinal illness and fever called salmonellosis. Most people with salmonellosis develop diarrhea, fever and abdominal cramps. More severe cases of salmonellosis may include a high fever, aches, headaches, lethargy, a rash, blood in the urine or stool, and in some cases, may become fatal.[14]

19.     On or about January, Plaintiff purchased Alimentum for her infant child.

---

[10] *Id*.
[11] *Id*.
[12] *Id*.
[13] *CDC Cronobacter*, 2022, https://www.cdc.gov/cronobacter/index.html (last visited on February 22, 2022)
[14] *FDA News Release*, Feb. 17, 2022, https://www.fda.gov/news-events/press-announcements/fda-warns-consumer not-use-certain-powdered-infant-formula-produced-abbott-nutritions-facility (last visited Feb. 22, 2022).

20.     At least one of the infant formula containers purchased had lot numbers matching the tainted lots identified by the FDA news advisory (27943Z26 with a use by date of April 1, 2024).

21.     Plaintiff's minor child consumed the tainted infant formula.

22.     On or about February of 2022, Plaintiff's minor child began developing symptoms of gastro intestinal distress including: overwhelming diarrhea ( in excess of 10 times a day); abdominal pain; severe diaper rash with blisters and blood; dehydration; sleeplessness; and other pain and injuries..

23.     Plaintiff's minor childs illness was caused by the consumption of the tainted Alimentum.

24.     To date, Plaintiff's minor child continues to suffer gastrointestinal and bowel problems as well as other pains and injuries.

25.     Plaintiff incurred and will continue to incur medical expenses, has suffered and will continue to suffer pain, loss of enjoyment of life, emotional distress, and medical problems in the future as a direct and proximate result of her ingestion of the contaminated infant formula.

## CLASS ACTION ALLEGATIONS

26.     Plaintiffs on behalf of themselves and all Class members, seek damages, multiplied as provided by law against Abbott Laboratories Inc.

27.     Plaintiffs brings this action on behalf of themselves and under Fed. R. Civ. P. 23(a) and (b)(1)(A) and (b)(3), as representative of a class of persons who are asserting claims for personal injuries against Abbott Laboratories Inc., caused by the consumption of tainted Similac, Alimentum, and/or EleCare infant formula.

28.     Excluded from the class are:

    a.  Defendants and their officers, directors, management, employees, subsidiaries, or affiliates;

    b.  All federal governmental entities;

c. All states (and sub-units of government and their entities) that, by law, preclude their participation as plaintiffs in private class action litigation;

d. The judges in this case and any members of their immediate families.

29. Common questions of law or fact predominate and include:

e. Whether Defendant negligently failed to exercise reasonable cae in the formulation, design, manufacturing, promotion, marketing, advertising, packaging, labeling, distribution and/or sale of Similac products;

f. Whether Defendant sold the tainted infant formula, that was unreasonably dangerous to consumers such as Plaintiff and members of the Class.

g. Whether Defendant failed to adequately warn the Plaintiffs and the Class of the health danger and/or hazard with respect to the tainted infant formula.

h. Whether Defendant was Negligent for failure to warn the Plaintiffs and the Class through the FDA

i. Whether the Plaintiffs and members of the class have suffered damages as a result of ingesting the tainted infant formula.

j. Whether Defendant was Negligent for failure to test

30. Plaintiffs' claims and basis for relief are typical to other members because all were subjected to the same tainted product and injured by its consumption.

31. Plaintiffs will fairly and adequately protect and represent the interests of the Class. Plaintiff's interests are coincident with, and not antagonistic to, those of the Class.

32. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

33. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

34. Class action treatment is a superior method for the fair and efficient adjudication of the controversy. Such treatment will permit a large number of similarly situated persons to prosecute

their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons or entities a method for obtaining redress on claims that could not practicably be pursued individually, substantially outweigh potential difficulties in management of this class action.

35.     Plaintiffs know of no special difficulty to be encountered in the maintenance of this action that would preclude litigating it as a class action.

## CAUSES OF ACTION

### COUNT I

### Breach of Express Warranty

36.     Plaintiff repeats and re-alleges the allegations above as if set forth herein.

37.     Plaintiff, and each member of the Class, formed a contract with Defendant at the time Plaintiff and each member of the Class purchased the Defendants Products.

38.     The terms of the contract include the promises and affirmations of fact made by Defendant on the Products' packaging and through marketing and advertising, as described above.

39.     This labeling, marketing, and advertising constitute express warranties and became part of the basis of the bargain and are part of the standardized contract between Plaintiff and the members of the Class and Defendant.

40.     As set forth above, Defendant purports through its advertising, labeling, marketing, and packaging, to create an express warranty that the Product is safe for its intended use.

41.     Plaintiff and the members of the Class performed all conditions precedent to Defendant's liability under this contract when they purchased the Products.

42.     Defendant breached express warranties about the Products and their qualities because Defendant's Product contained chemicals unsafe for consumption by babies at the time of purchase and the Products do not conform to Defendant's affirmations and promises described above.

43.     Plaintiff and each of the members of the Class would not have purchased the Products had they known the true nature of the harmful chemicals in the Product.

44.     As a result of Defendant's breach of warranty, Plaintiff and Class Members suffered and continue to suffer financial damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

## COUNT II

### Breach of Implied Warranty

45.     Plaintiff repeats and re-alleges the allegations above as if set forth herein.

46.     ALI is a merchant and was at all relevant times involved in the manufacturing, distributing, warranting, and/or selling of the Products.

47.     The Products are "goods" under the relevant laws, and ALI knew or had reason to know of the specific use for which the Products, as goods, were purchased.

48.     ALI entered into agreements with retailers to sell its Products to be used by Plaintiff and Class Members for personal use.

49.     The implied warranty of merchantability included with the sale of each Product means that ALI guaranteed that the Products would be fit for the ordinary purposes for which baby foods are used and sold, and were not otherwise injurious to consumers. The implied warranty of merchantability is part of the basis for the benefit of the bargain between ALI, and Plaintiff and the Class Members.

50.     ALI breached the implied warranty of merchantability because the Products are not fit for their ordinary purpose of being consumed by babies because the Products result in *Cronobacter sakazakii* and *Salmonella* infections. Therefore, the Products are not fit for their particular purpose of safely being consumed by babies.

51.     ALI's warranty expressly applies to the purchaser of the Products, creating privity between ALI and Plaintiff and Class Members.

52.     However, privity is not required because Plaintiff and Class Members are the

28

intended beneficiaries of ALI's warranties and its sale through retailers. ALI's retailers were not intended to be the ultimate consumers of the Products and have no rights under the warranty agreements. ALI's warranties were designed for and intended to benefit the consumer only, including Plaintiff and Class Members.

53.    ALI has been provided sufficient notice of its breaches of implied warranties associated with the Products. ALI was put on constructive notice of its breach through its review of consumer complaints and other reports, including the FDA investigation discussed throughout this complaint, and upon information and belief through its own product testing.

54.    Had Plaintiff, Class Members, and the consuming public known that the Products were unsafe for baby consumption, they would not have purchased the Products or would have paid less for them.

55.    As a direct and proximate result of the foregoing, Plaintiff and Class Members suffered and continue to suffer financial damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

## COUNT III

### Fraudulent Concealment

56.    Plaintiff repeats and re-alleges the allegations above as if set forth herein.

57.    Plaintiff brings this claim against Defendant, on behalf of herself and the other members of the Class.

58.    Defendant had a duty to disclose material facts to Plaintiff and the Class given their relationship as contracting parties and intended users of the Products. Defendant also had a duty to disclose material facts to Plaintiff and the Class, namely that it was in fact manufacturing, distributing, and selling harmful products unfit for use by babies, because Defendant had superior knowledge such that the transactions without the disclosure were rendered inherently unfair.

59.    Defendant possessed knowledge of these material facts at least four months before issuing their first recall. Further, *Cronobacter sakazakii* and *Salmonella* are not unavoidable in the

28

manufacturing of baby foods.

60. During this time, Plaintiff, and members of the Class, were using the Products without knowing they posed serious threats to their babies.

61. Defendant failed to discharge its duty to disclose these materials facts.

62. In so failing to disclose these material facts to Plaintiff and the Class, Defendant intended to hide from Plaintiff and the Class that they were purchasing and consuming the Products with harmful defects that was unfit for human use, and thus acted with scienter and/or an intent to defraud.

63. Plaintiff and the Class reasonably relied on Defendant's failure to disclose insofar as they would not have purchased the defective Products manufactured and sold by Defendant had they known they were not safe for consumption by babies.

64. As a direct and proximate cause of Defendant's fraudulent concealment, Plaintiff, and the Class, suffered damages in the amount of monies paid for the defective Products.

65. As a result of Defendant's willful and malicious conduct, punitive damages are warranted.

## COUNT IV

### Unjust Enrichment

66. Plaintiff incorporates the allegations set forth in the preceding paragraphs as though set forth fully herein.

67. Plaintiff, and the other members of the Class, conferred benefits on Defendant in the form of monies paid to purchase Defendant's defective and worthless Products.

68. Defendant voluntarily accepted and retained this benefit.

69. Because this benefit was obtained unlawfully, namely by selling and accepting compensation for products unfit for human use, it would be unjust and inequitable for Defendant to retain the benefit without paying the value thereof.

70. Defendant received benefits in the form of revenues from purchases of the Products

to the detriment of Plaintiff, and the other members of the Class, because Plaintiff, and members of the Class, purchased mislabeled products that were not what they bargained for and were not safe and effective, as claimed.

71.     Defendant has been unjustly enriched in retaining the revenues derived from the purchases of the Products by Plaintiff and the other members of the Class. Retention of those monies under these circumstances is unjust and inequitable because Defendant's labeling of the Products was misleading to consumers, which caused injuries to Plaintiff, and members of the Nationwide Class, because they would have not purchased the Products had they known the true facts.

72.     Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and members of the Class is unjust and inequitable, Defendant must pay restitution to Plaintiff and members of the Class for its unjust enrichment, as ordered by the Court.

## COUNT V

### Breach of the Implied Warranty of Merchantability

73.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

74.     Plaintiff brings this claim against Defendant, on behalf of herself and the other members of the Class.

75.     Defendants are merchants engaging in the sale of goods to Plaintiff and the Class.

76.     There was a sale of goods from Defendants to Plaintiff and the Class.

77.     As the developer, manufacturer, marketer, distributor, and/or seller of the defective Products Defendants impliedly warranted to Plaintiff and the Class that its Products were fit for their intended purpose in that they would be safe for Plaintiff and the Classes to use as baby food.

78.     Contrary to these representations and warranties, the Products were not fit for their ordinary use, and did not conform to Defendants' affirmations of fact and promises as use of the Products was accompanied by the risk of adverse health effects that do not conform to the packaging.

28

79.     Defendants breached the implied warranty in the contract for the sale of the Products by knowingly selling to Plaintiff and the Classes a product that Defendants knew would expose Plaintiff and the Class to significant health risks, thus meaning Defendants knew that the Products were not fit for their intended purpose.

80.     Defendants were on notice of this breach, as they were made aware of the adverse health effects accompanying use of their Products.

81.     Plaintiff and the Classes did not receive the goods as bargained for because the goods they received were not merchantable as they did not conform to the ordinary standards for goods of the same average grade, quality, and value.

82.     Plaintiff and members of the Classes are the intended beneficiaries of Defendant's implied warranties.

83.     The Products were not altered by Plaintiff or the members of the Class.

84.     Plaintiff and members of the Class used the Products in the ordinary manner in which such devices were intended to be used.

85.     The Products were defective when they left the exclusive control of Defendant.

86.     The Products were defectively designed and/or manufactured and unfit for their intended purpose, and Plaintiff and members of the Class did not receive the goods that they bargained for.

87.     Plaintiff and members of the Class purchased the Products that contained the Defect, which was undiscoverable by them at the time of purchase and at any time during the class period.

88.     As a result of the defect in the Products, Plaintiff and members of the Classes have suffered damages including, but not limited to, the cost of the defective device, loss of use of the device and other related damage.

89.     Defendants breached the implied warranty of merchantability to the Plaintiff and Class members.

90.     Thus, Defendants' attempt to limit or disclaim the implied warranties in a manner

28

that would exclude coverage of the Defect is unenforceable and void.

91.     Plaintiff and Class members have been damaged by Defendants' breach of the implied warranties.

92.     Plaintiff and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, available under law.

## COUNT VI

### Strict Liability – Failure to Warn

93.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

94.     Defendants had a duty to warn Plaintiff and the Class members regarding the Defect and the true risks associated with the Products.

95.     Defendants were in a superior position to know of the Defect, yet, as outlined above, chose to do nothing when the defect became known to them.

96.     Defendants failed to provide adequate warnings regarding the risks of the Products after knowledge of the Defect was known only to them.

97.     Defendants had information regarding the true risks but failed to warn Plaintiff and members of the Classes to strengthen their warnings.

98.     Despite their knowledge of the Defect and obligation to unilaterally strengthen the warnings, Defendants instead chose to actively conceal this knowledge from the public.

99.     Plaintiff and members of the Classes would not have purchased, chosen, and/or paid for all or part of the Products if they knew of the Defect and the risks of purchasing the Products.

100.    This Defect proximately caused Plaintiff's and Class members' damages.

101.    The Plaintiff and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, available under law.

## COUNT VII

### Strict Liability – Design Defect

102.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

103.    The design of the Products was defective and unreasonably dangerous.

104.    Use of Defendant's Products by Plaintiff and members of the Class, caused exposure to and risk of *Cronobacter sakazakii* and *Salmonella* infections.

105.    The design of the Products rendered them not reasonably fit, suitable, or safe for their intended purpose.

106.    The dangers of the Products outweighed the benefits and rendered the Products unreasonably dangerous.

107.    There are other Products and other similar baby formulas that do not cause *Cronobacter sakazakii* and/or *Salmonella* infections, meaning that there were other means of production available to Defendants.

108.    The Products were unreasonably unsafe, and the Products should have had stronger and clearer warnings or should not have been sold in the market.

109.    The Products did not perform as an ordinary consumer would expect.

110.    Plaintiff and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, available under law.

## COUNT VIII

### Negligent Failure to Warn

111.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

112.    Defendants owed Plaintiff and Class members a duty of care and to warn of any risks associated with the Products.

28

113.     Defendants knew or should have known of the defect but failed to warn Plaintiff and members of the Classes.

114.     Defendants' breach of duty caused Plaintiff and Class members economic damages and injuries.

115.     Plaintiff and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, available under law.

## COUNT IX

### Negligent Design Defect

116.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

117.     Defendant owed Plaintiff and the Classes a duty to design the Products in a reasonable manner.

118.     The design of the Products was defective and unreasonably dangerous, causing *Cronobacter sakazakii* and *Salmonella* infections.

119.     The design of the Products caused them to be not fit, suitable, or safe for their intended purpose. The dangers of the Products outweighed the benefits and rendered the products unreasonably dangerous.

120.     There are other baby foods that do not cause *Cronobacter sakazakii* and *Salmonella* infections.

121.     The risk/benefit profile of the Products was unreasonable, and the Products should have had stronger and clearer warnings or should not have been sold in the market.

122.     The Products did not perform as an ordinary consumer would expect.

123.     The Defendants' negligent design of the Products was the proximate cause of damages to the Plaintiff and the Class members.

124.     Plaintiff and Class members have suffered damages in an amount to be determined

28

at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees, available under law.

## COUNT X

### Violation of the Magnuson-Moss Act, 15 U.S.C. § 2301

125.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

126.    The Magnuson-Moss Act contains, in pertinent part, the following definitions:

(1)The term "consumer product" means any tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes (including any such property intended to be attached to or installed in any real property without regard to whether it is so attached or installed)

(3)The term "consumer" means a buyer (other than for purposes of resale) of any consumer product, any person to whom such product is transferred during the duration of an implied or written warranty (or service contract) applicable to the product, and any other person who is entitled by the terms of such warranty (or service contract) or under applicable State law to enforce against the warrantor (or service contractor) the obligations of the warranty (or service contract).

(4) The term "supplier" means any person engaged in the business of making a consumer product directly or indirectly available to consumers.

(5) The term "warrantor" means any supplier or other person who gives or offers to give a written warranty or who is or may be obligated under an implied warranty.

(7) The term "implied warranty" means an implied warranty arising under State law (as modified by sections 2308 and 2304(a) of this title) in connection with the sale by a supplier of a consumer product.

15 U.S.C.A. § 2301.

127.    Plaintiff and members of the Class are "consumers". 15 U.S.C. § 2301(3).

28

128.    Defendant is a "supplier" and "warrantor."  15 U.S.C. § 2301(4) and (5).

129.    The Products are consumer products. 15 U.S.C. § 2301(1).

130.    This is a claim arising out of state law, per 15 U.S.C. § 2301 (7).

131.    Defendant impliedly warranted that the Products would be free of defects at the time of delivery, and the Products carried an implied warranty of merchantability.

132.    Defendant breached its warranties by offering for sale and selling the Products that were by design and construction defective and unsafe, thereby subjecting Class members who purchased the Products to damages and risks of loss and injury.

133.    Defendant has breached and continues to breach its written and implied warranties of safety, thereby damaging Plaintiff and the Classes, when their Products fail to perform as represented due to an undisclosed Defect.

134.    As a result of Defendant's continued breach of its warranties, Plaintiff and Class members have suffered damages.

135.    Plaintiff and the Classes seek full compensatory and consequential damages allowable by law, appropriate equitable relief including injunctive relief, a declaratory judgment, a court order enjoining Defendant's wrongful acts and practices, restitution, attorney's fees and costs, and any other relief to which Plaintiff and the Classes may be entitled.

## COUNT XI

### Punitive Damages

136.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

137.    At all relevant times, Defendant owed Plaintiff and Class members a duty to act with due care and regard for Plaintiff and Class member's rights, safety and interests, including their property and financial interests.

138.    Defendant breached that duty of due care and such breaches constitute outrageous conduct and reckless disregard of the rights, safety and interests, including property and financial

interests, of Plaintiff and Class members.

139.     Defendant's outrageous conduct towards Plaintiff and Class members was done with malice or bad motives or reckless indifference to Plaintiff's and Class member's interests.

140.     Accordingly, Defendant is liable for punitive damages to Plaintiff and Class members, the exact amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs, on behalf of themselves and the Class, respectfully requested that the Court:

a.  Determine that this action may be maintained as a class action pursuant to Fed. R. Civ. P. 23(a) and (b)(1)(A) and (b)(3), and direct that reasonable notice of this action, as provided by Fed. R. Civ. P. 23(c)(2), be given to the Class and declare the Plaintiffs the representatives of the Class;

b.  Enter judgment against each Defendant in favor of Plaintiffs and the Class;

c.  Award to Plaintiffs and the Class damages (and multiple damages as provided by law) in amounts to be determined at trial;

d.  Award to Plaintiffs and the Class their costs of suit, including reasonable attorneys' fees as provided by law;

e.  Grant such other further relief as is necessary to correct for effects caused by Defendant's conduct, as the Court deems just.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all claims in this Complaint and of any and all issues in this action so triable as of right.

[signature on next page]

Dated: this 23 day of February, 2022.

Respectfully submitted,

28

By: */s/ Paul Doolittle*
Paul Doolittle
Eric M. Poulin
Roy T. Willey, IV
Blake G. Abbott
**ANASTOPOULO LAW FIRM, LLC**
32 Ann Street
Charleston, SC 29403
(843) 614-8888
eric@akimlawfirm.com
roy@akimlawfirm.com
pauld@akimlawfirm.com